# IN RE DISBARMENT OF OZRO YAKEY.[1]

January 21, 1927.

No. 24,635.

**Attorney suspended for two years.**

Attorney and Client, 6 C. J. p. 607 n. 90; p. 612 n. 52.

Proceedings for disbarment. Respondent found guilty of two charges preferred against him and suspended for two years.

*Harold G. Cant* and *Edwin D. Ford,* for state board of law examiners.

*Paul D. Stratton,* for respondent.

PER CURIAM.

This proceeding for the disbarment of Ozro Yakey, a member of the bar of this court, residing at Benson, is before us upon a transcript of the testimony and the documentary evidence accompanying the same, but without any finding of fact by a referee. It has therefore been necessary for us to become ourselves triers of the facts. Our consideration of the case has led to conclusions which may be expressed briefly as follows:

The accusation by the state board of law examiners prefers five distinct charges of misconduct. The first, second and fourth may be considered together. With respect to each of them there is evidence which standing alone would sustain a conviction. But when it is weighed, as it must be, with the opposing evidence the result must be an acquittal. Some of the testimony in support of these accusations is in some respects unsatisfactory. The same may be said also concerning some of the evidence for respondent. No useful purpose would be served by detailed discussion. It is enough that we have concluded that, under the rules applicable in disbarment proceedings, the prosecution has not sustained the burden of proof resting upon it. The respondent is found not guilty on these charges.

[1]Reported in 212 N. W. 13.

The third charge of misconduct refers to the collection by Mr. Yakey in the spring of 1924 of a claim of $45 belonging to two sisters, Hannah Kriz and Mary Kriz. Both retainer and collection are admitted and also that the money has never been paid to the clients on whose behalf it was collected, or either of them. The defense is that the money was finally applied on a claim for fees which Mr. Yakey had against Fred Kriz, an uncle of Hannah and Mary. There is testimony, including that of respondent, that the girls consented to having their money so applied upon the debt of the uncle. The consent of one of them was finally procured, but by methods which should never be resorted to for such a purpose by an attorney against his clients, particularly one so little qualified by disposition and experience to protect her own interests. The claim is, and the record has brought us to a belief in it, that the consent of one of them, Mary, was finally procured to the settlement testified to by Mr. Yakey (whereby the money was applied upon the debt of the uncle) through threats made by the respondent of expensive litigation against the uncle. Such a method of keeping young and inexperienced clients out of the enjoyment of money that is theirs ought not to be resorted to by any attorney. Regretfully we have concluded that Mr. Yakey did make use of it in this case. But aside from that, and before the alleged settlement, to which one sister, Hannah, never consented, the money had been withheld by Mr. Yakey from the girls for an inexcusably long time without their consent. He does not claim to have made prompt report of the collection to them. He does not claim to have made an accounting other than that effected in the final adjustment of the uncle's account. He does testify that he considered that the girls themselves were indebted to him. The whole record does not support that claim. It leads rather to the conclusion that Mr. Yakey was guilty in this case of wrongfully withholding the money in question from his clients and that he finally resorted to the improper method referred to of keeping it for his own benefit, but allowing credit therefor, as already indicated, upon the account of the uncle.

The fifth charge against Mr. Yakey has to do with the affairs of a client who was arrested early in the summer of 1920 upon a charge

of incest. In July he pleaded guilty and was sentenced to the penitentiary. Mr. Yakey represented him in his preliminary hearing and also on his appearance to plead and receive sentence. Thereafter he assisted in procuring his client's parole. In the meantime and during the summer and fall of 1920 he disposed of upwards of $2,600 worth of personal property for his client and with the latter's authority. There was left in his hands a balance of about $400, which respondent has claimed to be no more than compensation for his services and expenses. Nevertheless he is charged with having converted the entire balance to his own use. The evidence that the value of his services, plus his expenses, equals or exceeds the amount retained by him, is sufficiently persuasive so that there is no ground for charging him with conversion. Of that charge respondent is found not guilty.

However, this charge, the fifth, also accuses respondent of failing to account to his client for the proceeds of the personal property sold by him as already stated. On that branch of this charge we find defendant guilty. It is apparent from respondent's own testimony that he was woefully lax in the matter of keeping current, correct and full records of his financial dealings for clients. He had to depend too largely upon his own memory and miscellaneous memoranda of one kind or another for his own version of his disposition of the upwards of $2,600 worth of property now in question. It is a negative thing, but serious dereliction notwithstanding, for an attorney not to keep proper records of his dealings with his clients' property, particularly money. Respondent's claim here is that he did account finally to his client while the latter was in the penitentiary. All of the money except about $475 had then been disbursed. The client asked him what the grain brought and his reply was that, after the client got out, "we will have to look that up and find out." The client's incarceration did not suspend his right to a prompt, written, detailed accounting, both of receipts and disbursements, from his attorney. There has never been such an accounting. There have been summary and more or less general statements, at first oral and then finally one in writing. Before the

latter was obtained another lawyer had been employed to ascertain the facts. The proof that respondent did not convert any of the money to his own purposes relieves him of criminal responsibility. It does not acquit him of the very serious misconduct committed in his long delay in accounting and his failure to make any such accurate and detailed accounting as an attorney should make. Respondent was acting in a trust capacity and his conduct has evidenced a very inadequate conception of the duties resting upon him as attorney and trustee.

It is the judgment of the court that, because of the misconduct of which respondent has been found guilty on the third and fifth charges, he be suspended from the practice of the profession of law for the period of two years. Let judgment be entered accordingly.